IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LAURA BUTTERFIELD,                          05-CV-639-BR

          Plaintiff,                        OPINION AND ORDER

v.

RAFIQ R. ABOU-SHAABAN, SAMAR
R.A. ABOU-SHAABAN, and JOHN &
JANE DOES NOS. I-XX,

          Defendants.


**CRAIG EDWARD KENNEDY**
14300 N.E. 20th Avenue
Suite D201321
Salmon Creek, WA  98686
(360) 600-8974

**JEFFREY M. KILMER**
732 N.W. 19th Avenue
Portland, OR  97209
(503) 224-0055

          Attorneys for Plaintiff


1 - OPINION AND ORDER

**RAFIQ R. ABOU-SHAABAN**
Science - Ajman University
P.O. Box 5102
Abu Dhabi, UAE

       Defendant, *Pro Se*

**BROWN, Judge.**

    This matter comes before the Court on Plaintiff Laura Butterfield's Motion for Default Judgment (#94) as to Defendant Rafiq R. Abou-Shaaban.  For the reasons that follow, the Court **GRANTS** Plaintiff's Motion and awards Plaintiff **$500,000** in noneconomic damages and $2,500,000 in punitive damages.

<u>**FACTUAL BACKGROUND**</u>

    Plaintiff and her husband, Defendant Rafiq Abou-Shaaban, had two children and resided in Illinois.  The parties separated in 1980, and Plaintiff and the children moved to Kansas.  Rafiq Abou-Shaaban remained in Illinois.

    In April 1981, Plaintiff and the children moved to Portland, Oregon.  Plaintiff and Rafiq Abou-Shaaban divorced, and Plaintiff was awarded full custody of the children in November 1981.

    On December 31, 1981, Rafiq Abou-Shaaban failed to return the children to Plaintiff after an unsupervised visit.  Rafiq Abou-Shaaban took the children to the Middle East and eventually settled with the children in Saudi Arabia.

    According to the parties, state and federal criminal

2 - OPINION AND ORDER

indictments were filed against "Defendants," but the parties do not provide any specific information describing the charges. Thereafter Plaintiff flew to Saudi Arabia and was allowed one visit with her children.  Plaintiff alleges Rafiq Abou-Shaaban, with the assistance of counsel, began a series of bad-faith negotiations in 1989 for the return of the children to Plaintiff's custody.  According to Plaintiff, Rafiq Abou-Shaaban continued to call her weekly and to insist that she "drop the charges" against him, which she did after 17 years.  The record does not reflect whether the State formally dismissed the criminal charges.

Defendants and the children (who are now adults) still reside in the Middle East.

## PROCEDURAL BACKGROUND

On October 18, 2004, Plaintiff filed a complaint against Rafiq Abou-Shaaban; Samar Abou-Shaaban, Rafiq Abou-Shaaban's wife; and "John and Jane Does 1-XX" in the United States District Court for the Western District of Washington alleging numerous torts, including intentional infliction of emotional distress, negligent infliction of emotional distress, and custodial interference.  Defendants filed a motion to dismiss for lack of personal jurisdiction.  The Washington court denied the motion on the ground that even though the complaint was unclear,

Plaintiff's affidavit established she and her children lived in Washington at the time of the alleged tortious acts by Defendants.

On February 17, 2005, Defendants filed a second motion to dismiss in the Western District of Washington case alleging Plaintiff failed to state a claim in the complaint and the statute of limitations had run.  In the alternative, Defendants moved to make the complaint more definite and certain.  On March 7, 2005, Plaintiff filed a response to Defendants' motion and an amended complaint.

On April 19, 2005, the Washington court issued an opinion and order in which it concluded it lacked personal jurisdiction because Plaintiff alleged in her amended complaint that she and her children resided in Oregon rather than Washington at the time of the tortious action (*i.e.*, the abduction).  The Washington court then transferred the matter to this Court.

On August 31, 2005, Defendants filed a Motion to Dismiss on the grounds that the statute of limitations had run and that Plaintiff had failed to state a claim.  Alternatively, Defendants moved to strike portions of the Amended Complaint. On November 14, 2005, the Court held a hearing on Defendants' Motion to Dismiss, denied Defendants' Motion, and ordered discovery on the limited jurisdictional issue of Rafiq Abou-Shaaban's residency at the time of the alleged abduction.

4 - OPINION AND ORDER

On December 12, 2005, Plaintiff filed a Second Amended Complaint alleging claims for custodial interference, intentional infliction of emotional distress, negligent infliction of emotional distress, fraud, and/or bad faith against Defendants.

On June 8, 2006, Rafiq Abou-Shaaban filed a Motion for Summary Judgment. On June 22, 2006, Plaintiff filed a Cross-Motion for Summary Judgment. On October 17, 2006, the Court issued an Opinion and Order denying both Motions.

On November 8, 2006, Lawrence Hunt, counsel for Rafiq About-Shaaban, moved to withdraw on the ground that Rafiq Abou-Shaaban had not maintained contact with him. The Court granted the Motion. On November 14, 2006, the Court issued an Order notifying Rafiq Abou-Shaaban that he must file with the Court a written statement confirming his intention to appear and to defend this action no later than December 11, 2006. The Court further informed Rafiq Abou-Shaaban that if he failed to file a statement, the Court would conclude he did not intend to defend against Plaintiff's claims and Plaintiff would have leave to seek a default judgment against him. Rafiq Abou-Shaaban did not file a statement or any other materials with the Court.

On January 8, 2007, Plaintiff filed a Motion for Default Judgment. On February 20, 2007, the Court held a hearing on Plaintiff's Motion and took Plaintiff's proffer of evidence. At the hearing, Plaintiff informed the Court that she was seeking a

default judgment only against Rafiq Abou-Shaaban.  Accordingly, the Court entered an Order of Dismissal as to Defendants Samar Abou-Shaaban and Does I-XX.  The Court ultimately gave Plaintiff until May 29, 2007, to file materials in further support of her request for a Default Judgment against Rafiq Abou-Shaaban.


## STANDARDS

Federal Rule of Civil Procedure 55 provides in pertinent part:

> (a)  When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.
>
> **(b)  Judgment.**  Judgment by default may be entered as follows:
>
> > \* \* \*
>
> **(2)  By the Court.**  [T]he party entitled to a judgment by default shall apply to the court therefor. . . .  If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investi-gation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper.


## DISCUSSION

Plaintiff seeks economic, noneconomic, and punitive damages on her claims for custodial interference, intentional infliction

6 - OPINION AND ORDER

of emotional distress, and fraud or bad faith.

**I.   Economic Damages**

Plaintiff seeks economic damages for (1) ongoing psychotherapy expenses between $50 and $100 per week since the abductions, (2) lost earnings, and (3) child-support payments of $500 per month.

**A.   Psychotherapy Expenses**

To support her request for psychotherapy expenses, Plaintiff relies on a letter from Kathy J. Marshack, Ph.D., P.S., who met with Plaintiff in February 2004.  Dr. Marshack notes "[t]he shock of losing one's children and not being able to protect them, is enough to create lifelong depression, anxiety, insomnia, obsessive/compulsive disorder, innumerable psycho-somatic complaints, hypervigilance, psychic numbing and so on." Dr. Marshack concludes Plaintiff "suffers from many of the classic symptoms of PTSD [Post-Traumatic Stress Disorder] as a result of this tragedy."

The Court finds the letter from Dr. Marshack is not sufficient to establish that Plaintiff suffers from PTSD. Dr. Marshack did not diagnose Plaintiff with PTSD, but instead noted Plaintiff suffers from many of the symptoms of PTSD. Moreover, Dr. Marshack does not indicate she has been Plaintiff's treating psychotherapist or that she has ever treated Plaintiff.

Even if Dr. Marshack's letter was sufficient to establish a diagnosis of PTSD, Plaintiff did not support her request for psychotherapy expenses of $50 to $100 per week with any doctor bills or similar evidence. Plaintiff also did not provide the Court with a diagnosis or other evidence from Plaintiff's treating physician. Finally, Plaintiff did not specify the length of time that she has been in psychotherapy or provide the Court with a breakdown or total of her psychotherapy costs.

Accordingly, the Court declines to award damages for Plaintiff's psychotherapy costs.

**B.    Lost Earnings**

Plaintiff seeks damages for lost earnings.

> Damages for loss of future earnings must be established with reasonable certainty in the sense that the evidence must show both the existence and amount of net income loss . . . . Evidence of plaintiff's future earning capacity need not be capable of exact monetary determination, but must indicate fairly the capacity of the plaintiff to earn money in his usual vocation, and the probability of his being able to do so in the future.

*Wooton v. Viking Distrib. Co., Inc.*, 136 Or. App. 56, 66 (1995)(citations and quotations omitted).[1]

Plaintiff asserts she "lost her ability to train as a

---

[1] This matter is in this Court on the basis of diversity jurisdiction. The Court, therefore, applies state substantive law. *See Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1090 (9th Cir. 2001)(federal courts sitting in diversity apply state substantive law and federal procedural law).

8 - OPINION AND ORDER

Registered Nurse and lost those earnings during the course of her lifetime." According to Plaintiff, she was accepted as a nursing student before Defendant abducted her children, but she could not complete the nursing program or become a nurse as a result of the psychological trauma as a result of the abduction. Plaintiff seeks $5,483,845 in damages as a lump-sum present value of her lost earnings as a nurse over her lifetime.

As noted, lost earnings under Oregon law are intended to compensate a plaintiff for the inability "to earn money in [her] usual vocation." Plaintiff, however, was not a nurse at the time her children were abducted and, in fact, was not even a student in a nursing program. Thus, Plaintiff has not established with "reasonable certainty" that, absent the abduction of her children, she would have completed a nursing program, become employed as a nurse, or remained in that field for over twenty years.

Accordingly, the Court concludes on this record that Plaintiff's lost earnings as a nurse are only speculative, and, therefore, the Court declines to award Plaintiff damages for same.

### C.  Child-Support Payments

Plaintiff also seeks economic damages in the form of child-support payments of $500 per month from June 1981 until a Child Support Order allegedly entered by the Kansas Superior

9 - OPINION AND ORDER

Court was vacated.[2]

Federal courts are subject to a domestic-relations exception to their exercise of diversity jurisdiction. *Bennett v. Bennett,* 682 F.2d 1039, 1042 (D.C. Cir. 1982)(citation omitted).  Under the domestic-relations exception, federal courts may not take jurisdiction over cases that would require those courts to grant a divorce, to determine alimony or support obligations, or to resolve parental conflicts over the custody of their children.  *Id.* (citations omitted).  The domestic-relations exception does not apply, however, to all cases "'having intrafamily aspects.'"  *Id.* (quoting *Cole v. Cole*, 633 F.2d 1083, 1088 (4th Cir. 1980)).  For example, actions "'whose essence is in, for example, tort or contract, and which do not require the federal court to exceed its competence, will be heard.'"  *Id.* (quoting *Cole*, 633 F.2d at 1088).  In addition, federal courts should enforce "monetary obligations arising out of final state divorce decrees that are no longer subject to modification under the full faith and credit clause."  *Id.* at n.2 (citation omitted).  Accordingly, this Court can enforce an award of child support pursuant to the Full Faith and Credit Clause of § 1 of Article 4 of the United States Constitution.

Plaintiff asserts in her Memorandum in Support of

---

[2] The parties have not provided the Court with a copy of any Child Support Order nor any order vacating the Child Support Order.

Judgment by Default that she was awarded $500 per month in child support in June 1981.  Plaintiff attached a copy of a Judgment of Dissolution of Marriage from the Circuit Court of Cook County, Illinois, to her Motion for Summary Judgment.  Neither the Dissolution nor any other documents in the record, however, establish that she received an award of child-support payments.

Accordingly, the Court declines to award Plaintiff any damages for unpaid child support.

## II.  Noneconomic Damages

Noneconomic damages are

> subjective, nonmonetary losses, including but not
> limited to pain, mental suffering, emotional
> distress, humiliation, injury to reputation, loss
> of care, comfort, companionship and society, loss
> of consortium, inconvenience and interference with
> normal and usual activities apart from gainful
> employment.

Or. Rev. Stat. § 31.710

Plaintiff requests $500,000 in noneconomic damages on the ground that she suffered gross psychological impairment as a result of Rafiq Abou-Shaaban's custodial interference, intentional infliction of emotional distress, and fraud or bad faith.

When determining the amount of noneconomic damages, the Court must consider:  (1) the mental suffering and/or emotional distress that Plaintiff sustained from the time she was injured until the present and may continue to experience in the future as

11 - OPINION AND ORDER

a result, (2) any inconvenience and interference with Plaintiff's normal and usual activities apart from activities in a gainful occupation from the time she was injured until the present, and (3) any inconvenience and interference with her normal and usual activities that she may continue to experience in the future as the result of her injuries. *See, e.g., Bass v. Hermiston Med. Ctr., P.C.*, 143 Or. App. 268, 271 n.2 (1996).

Plaintiff has established she suffered severe mental and emotional distress due to Rafiq Abou-Shaaban's actions related to the abduction of her children, and she continues to be distressed. There is little doubt that Plaintiff reasonably would suffer mental and emotional distress after the abduction of her children and Rafiq Abou-Shaaban's refusal to allow Plaintiff to visit her children more than once since 1981.

Accordingly, the Court awards Plaintiff noneconomic damages of $500,000.

## III. Punitive Damages

### A. Punitive Damages Are Appropriate.

Oregon law allows punitive damages for claims of intentional infliction of emotional distress and fraud or bad faith. *See Lewis v. Oregon Beauty Supply Co.*, 302 Or. 616, 629 (1987). *See also Goddard v. Farmers Ins. Co.*, 202 Or. App. 79, 120 P.3d 1260 (2005). Oregon law allows punitive damages "as a means of vindicating society's interest in punishing and

deterring especially egregious conduct, rather than as a means for seeking redress for injury to person, property or reputation." *DeMendoza v. Huffman*, 334 Or. 425, 446 (2002). Punitive damages may be awarded in addition to general damages "to discourage the defendant and others from engaging in wanton misconduct." *Webster v. Dieringer's Variety, Inc.*, 84 Or. App. 519, 521 n.2 (1987).

Here the Court has concluded Plaintiff is entitled to general noneconomic damages for her claims of intentional infliction of emotional distress and fraud or bad faith against Rafiq Abou-Shaaban, and, therefore, the Court also may award punitive damages to Plaintiff if it concludes such an award would vindicate society's interest in punishing and deterring especially egregious conduct.

Rafiq Abou-Shaaban's conduct in abducting his daughters and refusing to allow Plaintiff to see them for several years constitutes an aggravated and deliberate disregard for Plaintiff's parental rights as well as for the rights of her daughters. Moreover, Rafiq Abou-Shaaban's custodial interference could constitute a Class B felony under Oregon law, and individuals who commit Class B felonies may face up to ten years in prison and a fine of up to $250,000. *See* Or. Rev. Stat. §§ 163.245, 163.257. Thus, Rafiq Abou-Shaaban's conduct supports a significant punitive damages award because the possibility of severe criminal sanctions

> > . . . for any individual who participated
> > . . . put [him] on notice that Oregon would
> > take such conduct very seriously.

*Groth v. Hyundai Precision and Ind. Co. Ltd.*, 209 Or. App. 781, 791 (2006)(quotation omitted).  The Court notes the children abducted are now adults and there is not any evidence before the Court that Rafiq Abou-Shaaban has other children outside of Saudi Arabia he is likely to abduct.  Nevertheless, Court also recognizes society has an interest in deterring this kind of conduct generally and in punishing Rafiq Abou-Shaaban for his behavior.

**B.    Amount of Punitive Damages**

When awarding punitive damages, the Court

> may properly consider the following items in
> fixing the amount:  The character of the
> defendant's conduct, the defendant's motives,
> and the amount of damages which would be
> required to discourage the defendant and
> others from engaging in such conduct in the
> future.

*Wolf*, 291 Or. at 835 n.3.

In the draft Judgment that Plaintiff submitted with her Motion for Default Judgment, Plaintiff requested $15,000,000 in punitive damages.  In her Memorandum in Support of her Motion, Plaintiff merely requests punitive damages "within the 1-10 ratio of her actual economic damages . . . leaning heavily toward the higher end of the range."

"The Due Process Clause of the Fourteenth Amendment

14 - OPINION AND ORDER

prohibits the award of an excessive amount of punitive damages against a tortfeasor because, to the extent that an award is excessive, it furthers no legitimate purpose and constitutes an arbitrary deprivation of property." *Id*. at 787 (citing *Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 433 (2001); *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 42 (1991)).

The Supreme Court has established three criteria for determining whether an award of punitive damages is excessive: "(1) consideration of the reprehensibility of the defendant's conduct; (2) the relationship between the harm or potential harm to the injured party and the punitive damages award; and (3) the disparity between the punitive damages award and the penalties . . . authorized or imposed in comparable cases." *Groth*, 209 Or. App. at 788 (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)). Oregon courts have applied the *Gore* criteria in a number of decisions. *See, e.g., Goddard v. Farmers Ins. Co. of Or.*, 202 Or. App. 79 (2005); *Waddill v. Anchor Hocking, Inc.*, 190 Or. App. 172 (2003); *Bocci v. Key Pharm., Inc.*, 189 Or. App. 349 (2003).

### 1. Degree of Reprehensibility

"[T]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *State Farm v.*

15 - OPINION AND ORDER

*Campbell*, 538 U.S. 408, 419 (2003).  When evaluating the reprehensibility of a defendant's conduct, the Court may consider:

>(1) whether the harm caused was physical as opposed to economic; (2) whether the tortious conduct evidenced an indifference to or a reckless disregard of the health or safety of others; (3) whether the target of the conduct had financial vulnerability; (4) whether the conduct involved repeated actions or was an isolated incident; and (5) whether the harm was the result of intentional malice, trickery, or deceit, or was a mere accident.

*Groth*. at 788 (citing *State Farm*, 538 U.S. at 419).

Rafiq Abou-Shaaban's conduct caused Plaintiff mental and emotional injury as opposed to mere economic harm.  In addition, Rafiq Abou-Shaaban was indifferent to and recklessly and deliberately disregarded the emotional and mental health of both Plaintiff and her daughters.  As the record reflects, Rafiq Abou-Shaaban attempted to kidnap his daughters on more than one occasion and continued to attempt to remove them from Plaintiff's custody until he finally succeeded.  Finally, the record reflects Rafiq Abou-Shaaban acted intentionally and used deceit.

Accordingly, the Court concludes Rafiq Abou-Shaaban's conduct was egregiously reprehensible.

### 2. Relationship of the Harm to Plaintiff and the Punitive Damages Requested by Plaintiff

The Supreme Court has not identified any concrete

constitutional limits on the ratio between compensatory damages
and punitive damages, but in practice "few awards exceeding a
single-digit ratio . . . will satisfy due process." *Groth*, 209
Or. App. 789 (citing *State Farm*, 538 U.S. at 425).  In addition,
Oregon Courts have found ratios of punitive damages to general
damages of 45:1 and 24:1 are excessive.  *See, e.g., Bocci*, 189
Or. App. at 360; *Goddard*, 202 Or. App. at 120.

### 3.   Penalties Authorized or Imposed

> The Court must:
>
> > (1) identify the comparable civil or criminal
> > sanctions; (2) consider how serious the
> > comparable sanctions are, relative to the
> > universe of sanctions that the legislature
> > authorizes to punish inappropriate conduct;
> > and (3) evaluate the punitive damage award in
> > light of the relative severity of the
> > comparable sanctions.

*Groth*. at 789 (citation omitted).  As noted, Rafiq Abou-Shaaban's
custodial interference could constitute a Class B felony under
Oregon law, and individuals who commit Class B felonies may face
up to ten years in prison and a fine of up to $250,000.  *See* Or.
Rev. Stat. §§ 163.245, 163.257.  As discussed, the possibility of
these criminal sanctions is sufficient to put Rafiq Abou-Shaaban
"on notice that Oregon would take such conduct very seriously."

Considering the reprehensibility of Rafiq Abou-
Shaaban's actions as well as the severity of the comparable

criminal sanctions, the Court concludes an award of $2,500,000 in punitive damages is within the bounds of due process and sufficient to "discourage the defendant and others from engaging in" the conduct at issue.

Accordingly, the Court awards $2,500,000 in punitive damages to Plaintiff.

<u>**CONCLUSION**</u>

For these reasons, the Court **GRANTS** Plaintiff's Motion for Default Judgment (#94) against Defendant Rafiq Abou-Shaaban and awards $500,000 in noneconomic damages and $2,500,000 in punitive damages to Plaintiff.

IT IS SO ORDERED.

DATED this 26th day of June, 2007.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

18 - OPINION AND ORDER